UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATRINA R. RODRIGUEZ, ON BEHALF OF HERSELF, ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>U.S. HEALTHWORKS, INC., A DELAWARE CORPORATION, et al.,<br><br>Defendants. | Case No. 17-cv-06924-KAW<br><br>**ORDER DENYING MOTION TO REMAND; GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 40, 45 |

Plaintiff Catrina R. Rodriguez filed the instant putative class action against Defendants U.S. Healthworks, Inc. and U.S. Healthworks Medical Group, asserting violations of the Fair Credit Reporting Act ("FCRA") and similar California laws. (Compl. ¶ 1, Dkt. No. 1-2.) Pending before the Court are Defendants' motion for summary judgment and Plaintiff's motion to remand. (Defs.' Mot. for Summary Judgment, Dkt. No. 40; Plf.'s Mot. to Remand, Dkt. No. 45.)

Upon consideration of the parties' filings, the relevant legal authority, and the arguments presented at the May 16, 2019 hearing, the Court DENIES Plaintiff's motion to remand and GRANTS Defendants' motion for summary judgment.

## I. BACKGROUND

On July 16, 2013, Plaintiff applied for employment with Defendants[1] through an online employment application. (Arnds Decl. ¶ 4, Dkt. No. 40-1; Rodriguez Decl. ¶ 3.) The online application system includes several stand-alone pages. (*See* Arnds Decl. ¶¶ 7-9, Exhs. D-F.) First, there is a "Certification" standalone webpage which requires applicants to certify the truth of their

---

[1] The parties dispute who actually employed Plaintiff. (*See* Defs.' Mot. for Summary Judgment at 3; Plf.'s Opp'n at 2 n.1, Dkt. No. 51.)

statements, "authorize the company and/or its agents, including consumer reporting bureaus, to verify any of this information," and "release the Company and all parties providing information to the Company about [the applicant's] background and experience from any liability whatsoever arising therefrom." (Arnds Decl., Exh. C.) To continue, the applicant must select "I Agree" or "I Disagree" before clicking "Save and Continue." (*Id.*)

Second, there is a standalone webpage "Notice and Disclosure Statement, which states:

> **Disclosure to Employment Applicant Regarding Procurement of A Consumer Report**
>
> In connection with your application for employment, we may procure a consumer report on you as part of the process of considering your candidacy as an employee. In the event that information from the report is utilized in whole or in part in making an adverse decision with regard to your potential employment, before making the adverse decision, we will provide you with a copy of the consumer report and a description in writing of your rights under the law.
>
> Please be advised that we may also obtain an investigative report including information as to your character, general reputation, personal characteristics, and mode of living. The information may be obtained by contacting your previous employers or references supplied by you. We may also obtain information about your driving history by searching motor vehicle records. Please be advised that you have the right to request, in writing, within a reasonable time, that we make a complete and accurate disclosure of the nature and scope of the information requested. Such disclosure will be made to you within 5 days of the date on which we receive the request from you or within 5 days of the time the report was first requested.
>
> The Fair Credit Reporting Act gives you specific rights in dealing with consumer reporting agencies. You will find these rights summarized on the "Summary of Your Rights under the Fair Credit Reporting Act" document. Click here to view. A Summary of Your Rights Under the Provisions of California Civil Code Section 1786.22. Click here to view.
>
> ADP Screening and Selection Services
> 301 Remington
> Fort Collins, Colorado 80524
> 800/367-5933
>
> **By selecting "<u>I Agree</u>", you hereby authorize us to obtain a consumer report and investigative consumer report about you, including but not limited to, motor vehicle records and criminal history records, in order to consider you for employment.**

(Arnds Decl., Exh. D.) The "Click here to view" text links to separate pamphlets that summarize

an applicant's rights under the FCRA and California Civil Code § 1786.22. (*See* Arnds Decl., Exhs. F-G.) Again, to continue, the applicant must select "I Agree" or "I Disagree" before clicking "Save and Continue." (Arnds. Decl., Exh. D.) Between the options "I Agree" or "I Disagree" and the "Save and Continue" button, the webpage states: "**\*I have received a copy of the following documents via links in the above Background Check Disclosure and Authorization Form: A Summary of Your Rights, A Summary of Your Rights under the Provisions of California Civil Code Section 1786.22**." (*Id.*)

Third, there is the "Application Statement," the final webpage in Defendants' application. (Arnds Decl., Exh. E.) This webpage requires that applicants "understand and agree that any job offer is also contingent upon the successful completion of a background check to include motor vehicle report, credit report and criminal records report." (*Id.*) Applicants were required to select "I Agree," and provide their name and the date of electronic signature. (*Id.*)

As part of her application, Plaintiff selected "I Agree" as to the Certification, the Notice and Disclosure Statement, and the Application Statement. (Arnds Decl., Exh. A at 6-8.)

On July 17, 2013, Plaintiff received an offer letter from Defendants. (Arnds Decl., Exh. I.) The offer letter stated that the "offer of employment is contingent on . . . A satisfactory background and reference check." (*Id.*) On July 24, 2013, Defendant USH requested that ADP perform a background check, ordering a social security number check, a criminal history report from Alameda County, and a "smart scan." (Arnds Decl., Exh. H at 1-2.) The background check was completed on July 25, 2013. (*Id.* at 1.)

Plaintiff's first day of employment was July 26, 2013. (Arnds Decl. ¶ 5.) That day, Plaintiff was required to acknowledge that she had received her offer letter and the "[s]atisfactory completion of pre-employment screening." (Arnds Decl., Exh. J.) On April 4, 2016, Plaintiff's employment was terminated. (Arnds Decl. ¶ 5.) During Plaintiff's employment, Plaintiff states that she did not know that Defendants had obtained a background check report, nor was she provided with a report. (Rodriguez Decl. ¶¶ 6, 8.)

On October 24, 2017, Plaintiff filed the instant putative class action in state court. (Compl. at 1.) Plaintiff brought four causes of action based on Defendants' alleged failure to: (1) make

3

proper disclosures in violation of FCRA § 1681b(b)(2)(A); (2) give a proper summary of rights in violation of FCRA §§ 1681d(a)(1) and 1681g(c); (3) make proper disclosures in violation of California's Investigative Consumer Reporting Agencies Act ("ICRAA"); and (4) make proper disclosures in violation of California's Consumer Credit Reporting Agencies Act ("CCRAA"). (Compl. ¶¶ 32-34, 49-50, 52-57, 66, 81.) Plaintiff also brings a cause of action for violation of California's Unfair Competition Law ("UCL"), which "incorporates by reference" Plaintiff's other four causes of action. (Compl. ¶ 91.)

On December 4, 2017, Defendants removed the case to federal court based on federal question jurisdiction. (Not. of Removal ¶ 5, Dkt. No. 1.) On May 1, 2018, the Court held a case management conference, setting the fact discovery deadline for November 30, 2018. (Dkt. No. 17.) On December 19, 2018, the Court granted the parties' stipulation extending the fact discovery deadline to February 1, 2019. (Dkt. No. 39.)

On April 1, 2019, Defendants filed the instant motion for summary judgment. (Defs.' Mot. for Summary Judgment, Dkt. No. 40.) On April 2, 2019, the parties filed a case management conference statement, in which Plaintiff for the first time suggested that the Court lacked subject-matter jurisdiction over the case because there was no Article III standing. (Dkt. No. 41 at 2.) On April 8, 2019, Plaintiff filed her motion to remand. (Plf.'s Mot. to Remand, Dkt. No. 45.)

On April 15, 2019, Plaintiff filed her opposition to Defendants' motion for summary judgment. (Plf.'s Opp'n, Dkt. No. 51.) On April 16, 2019, Plaintiff filed a motion to extend the fact discovery cut-off. (Dkt. No. 55.) On April 22, 2019, Defendants filed their opposition to Plaintiff's motion to remand and their reply in support of their motion for summary judgment. (Defs.' Opp'n, Dkt. No. 58; Defs.' Reply, Dkt. No. 59.) On April 29, 2019, Plaintiff filed her reply in support of her motion to remand. (Plf.'s Reply, Dkt. No. 61.)

## II. LEGAL STANDARD

### A. Motion to Remand

Federal courts exercise limited jurisdiction. A "federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). A defendant may

4

remove a civil action from state court to federal court if original jurisdiction would have existed at the time the complaint was filed. *See* 28 U.S.C. § 1441(a). "[R]emoval statutes are strictly construed against removal." *Luther v. Countrywide Homes Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," such that courts must resolve all doubts as to removability in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The burden of establishing that federal jurisdiction exists is on the party seeking removal. *See id.* at 566-67.

Federal district courts have original jurisdiction over actions that present a federal question or those based on diversity jurisdiction. *See Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 & n.2 (9th Cir. 2002). Federal district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that the basis for federal jurisdiction must appear on the face of the properly pleaded complaint, either because the complaint directly raises an issue of federal law or because the plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983).

### B. Motion for Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that

demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery, "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III. DISCUSSION

#### A. Motion to Remand

Here, Plaintiff moves to remand this case on the grounds that there is no subject matter

1 jurisdiction because Plaintiff has failed to sufficiently allege Article III standing. (Plf.'s Mot. to Remand at 2-3.) Specifically, Plaintiff contends she has not asserted any economic or other concrete injury as to her FCRA claims, which concern procedural violations only. (*Id.* at 3.)

Plaintiff's first cause of action concerns a violation of FCRA § 1681b(b)(2)(A), which "prohibits an employer from obtaining an applicant's consumer report[2] without first providing the applicant with a standalone, clear and conspicuous disclosure of its intention to do so and without obtaining the applicant's consent." *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1173 (9th Cir. 2019). Plaintiff's second cause of action concerns a violation of FCRA §§ 1681d and/or 1681g(c). FCRA § 1681d requires that the person procuring an investigative consumer report inform the consumer that she may make a written request for the report, while FCRA § 1681g(c) requires the provision of a summary of rights concerning a consumer's right to obtain a copy of her consumer report from each consumer reporting agency.

In general, "[a] plaintiff who alleges 'a bare procedural violation' of the FCRA, 'divorced from any concrete harm,' fails to satisfy Article II's injury-in-fact requirement." *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). Defendants, however, argue that Plaintiff has alleged economic harms stemming from her FCRA claims because her UCL claim -- which is premised on the FCRA violations -- asserts that "Plaintiff lost money or property as a result of the aforementioned unfair competition." (*See* Defs.' Opp'n at 7-8, 9.) The Court agrees.

The UCL prohibits "unfair competition," which is defined to "include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Here, Plaintiff asserts that Defendants violated the UCL because they violated "[f]ederal and California laws requir[ing] certain disclosures and proper authorization before conducting background checks . . . ." (Compl. ¶ 90, 95 ("The unlawful conduct of Defendants alleged herein amounts to and constitutes unfair competition").) Plaintiff expressly "re-alleges and incorporates by reference" the prior causes of

---

[2] A "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" for certain purposes, including employment purposes. 15 U.S.C. § 1681a(d).

7

action, including both FCRA claims. (Compl. ¶ 91.) Finally, Plaintiff alleges that "Plaintiff lost money or property as a result of the aforementioned unfair competition," which specifically includes the FCRA claims. (Compl. ¶ 92.) Thus, although Plaintiff does not allege any economic harm in her FCRA causes of action, Plaintiff has alleged that she suffered an economic injury as a direct result of her FCRA claims.[3]

Plaintiff contends that the Court should not rely on the UCL claim because "the Federal Rules of Civil Procedure . . . allow parties to plead inconsistent factual allegations and causes of action," citing *Maloney v. Scottsdale Insurance Co.*, 256 Fed. Appx. 29 (9th Cir. 2007). (Plf.'s reply at 4.) As *Maloney* makes clear, however, Plaintiff has not pled in the alternative. There, the Ninth Circuit acknowledged that "[t]he Federal Rules of Civil Procedure allow parties to plead inconsistent factual allegations in the alternative." *Maloney*, 256 Fed. Appx. at 31. The Ninth Circuit then concluded that the plaintiff had not pled in the alternative because "[t]he inconsistent allegations . . . were not pleaded in the alternative; they were expressly incorporated into each cause of action." Such is the case here, where Plaintiff's UCL claim explicitly "re-alleges and incorporates by reference the FIRST [(failure to make proper disclosure in violation of the FCRA) and] SECOND [(failure to give proper summary of rights in violation of FCRA)] . . . causes of action herein." (Compl. ¶ 91.)[4] Thus, the Court concludes that there is Article III standing for the

---

[3] Whether the allegations of economic damage are adequately pled to satisfy Rule 12(b)(6) is not before the Court.

[4] The Court acknowledges that in support of her motion to remand, Plaintiff relies on two cases which granted similar motions to remand. *See Kirkland v. Estes Forwarding Worldwide, LLC*, Case No. 18-cv-7324-LB, Dkt. No. 15; *Rivera v. Wells Fargo Bank, N.A.*, Case No. 17-cv-6885-JD, Dkt. No. 39. In both cases, however, the defendants did not oppose the motions to remand and the district court did not review the motions on the merits. *Kirkland*, Case No. 18-cv-7324-LB, Dkt. No. 15 ("the court grants the unopposed motion to remand"); *Rivera*, Case No. 17-cv-6885-JD, Dkt. No. 39 ("In light of the fact that defendant does not oppose the motion to remand, the case was removed improvidently and without jurisdiction."). Thus, neither case analyzed whether there was economic harm based on the UCL allegations.

The Court also observes that the *Kirkland* and *Rivera* plaintiffs were represented by Plaintiff's counsel here, and that the motions to remand were granted on January 13, 2019 and February 8, 2019, respectively. Plaintiff, however, did not move to remand the instant case until April 8, 2019, after Defendants filed their motion for summary judgment. Such delay suggests inappropriate gamesmanship.

On the day of the hearing, Plaintiff also provided the Court with *Moore v. United Parcel Service,*

FCRA claims, and DENIES Plaintiff's motion to remand.

Additionally, as discussed below, even if Plaintiff lacked Article III standing, remand would still be inappropriate because Plaintiff's state claims are futile because they are time-barred. *See Bell v. City of Kellogg*, 922 F.2d 1418, 1424-25 (9th Cir. 1991) (affirming dismissal of state claims because "[w]here the remand to state court would be futile . . . the desire to have state courts resolve state law issues is lacking. We do not believe Congress intended to ignore the interest of efficient use of judicial resources"); *Deutsch v. Turner Corp.*, 324 F.3d 692, 717-18 (9th Cir. 2003) (affirming dismissal of state law claims instead of remand where the claims were time-barred).

### B. Motion for Summary Judgment

Defendants move for summary judgment on several grounds, including that each of Plaintiff's claims are time-barred.

"FCRA requires a plaintiff to bring an action within the earlier of '(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for the employer's liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs.'" *Syed*, 853 F.3d at 506 (quoting 15 U.S.C. § 1681p) (internal modification omitted). With respect to the disclosure violations at issue in this case, the violation does not occur when the defective disclosure is provided. *Id.* Rather, "[t]he employer violates the FCRA only where, after violating its disclosure procedures, it procures or causes to be procured a consumer report about the job applicant." *Id.* (internal quotation and modifications omitted). Thus, a defendant arguing that a FCRA violation is time-barred has the burden of "demonstra[ing] that a reasonably diligent plaintiff would have *discovered* the facts constituting the violation." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012) (internal quotation omitted).

"The CCRAA provides a similar limitations period" as FCRA. *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1058 (C.D. Cal. 2014). It generally requires that the action

---

*Inc.*, Case No. 18-cv-7600-VC. The Court notes, however, that while a UCL claim was brought, the district court did not appear to consider the UCL claim issue. In any case, *Moore* is not binding on this Court.

9

"be brought 'within two years from the date the plaintiff knew or should have known of the violation of this title, but not more than seven years from the earliest date on which liability could have arisen . . . .'" *Id.* Similarly, "[a]n action to enforce any liability [under the ICRAA] may be brought . . . within two years from the date of discovery." Cal. Civil Code § 1786.52. Finally, "UCL claims are always subject to a four-year statute of limitations, even when they are based on [a] violation of a statute with a shorter limitations period." *Harris v. Home Depot U.S.A., Inc.*, Case No. 15-cv-1058-VC, 2016 WL 8114188, at *1 (N.D. Cal. Jan. 20, 2016); *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179 (2000).

Here, Defendants argue that Plaintiff knew or should have known that her consumer report was pulled by her first day of employment on July 26, 2013 -- more than four years prior to the filing of her lawsuit on October 24, 2017 -- because she knew her employment was conditioned on a successful background check. (Defs.' Mot. for Summary Judgment at 12.) In *Ruiz v. Shamrock Foods Co.*, the district court found, in dicta, that the plaintiffs' FCRA claims were barred because they "knew or should have known of the facts giving rise to a FCRA violation shortly after filling out his application for employment." Case No. 2:17-cv-6017-SVW-AFM, 2018 WL 5099509, at *6 n.6 (C.D. Cal. Aug. 22, 2018). The district court explained that both plaintiffs understood that a background check was being completed when they received their job offers because the "[p]laintiffs' offer letters informed them that their offer of employment was conditioned on the results of the background check." *Id.* Thus, they "were aware by their first day of employment with [the defendant] that background reports had issued since their offer letter made clear that their employment was contingent on the result of background checks." *Id.* Even if the plaintiffs did not have actual knowledge that the background reports were pulled, "they would have constructive knowledge since a reasonably diligent plaintiff would have determined that the background reports were completed, given that disclosure in their offer letters and that they knew they had the right to request a copy of the reports."

Similarly, in *Berrellez v. Pontoon Solutions, Inc.*, the district court found, in dicta, that the plaintiff's FCRA, CCRAA, and ICRAA claims were time barred because the plaintiff should have known his consumer report had been pulled by the time he started his work. Case No. 2:15-cv-

1898-CAS(FFMx), 2016 WL 5947221, at *6 (C.D. Cal. Oct. 13, 2016). There, the plaintiff received an offer to work on an assignment with Bank of America ("BANA"). *Id.* at *1. After receiving his offer, the plaintiff was required to fill out a consent form, which stated that federal law required BANA to ensure that individuals assigned to BANA did not have certain criminal convictions. *Id.* at *2. The consent form also requested consent to being fingerprinted and the preparation of an investigative consumer report. *Id.* The plaintiff was later fingerprinted, and background checks were performed. *Id.* Based on these facts, the district court concluded "that by the time plaintiff began his assignment with BANA, plaintiff had constructive notice that BANA had procured a background check" because he would have known that a background check would be obtained before he started his assignment. *Id.* at *7. The district court also noted that the fact that the plaintiff had his fingerprints taken put him on notice that BANA would obtain a background check. *Id.*

Here, when applying for a position with Defendants, Plaintiff agreed to allow Defendants to verify the information provided. (Arnds, Exh. A at 4.) Plaintiff also agreed that Defendants may procure a consumer report in considering her candidacy as an employee. (*Id.* at 4-5.) Plaintiff then received a job offer, which stated that the "offer of employment is contingent on the following: . . . A satisfactory background and reference check." (Arnds Decl., Exh. I.) Thus, like the plaintiffs in *Ruiz* and *Berrellez*, by the time Plaintiff started her employment on July 26, 2013, Plaintiff had at least constructive notice that Defendants had pulled a consumer report on Plaintiff because she would not have been able to start her position otherwise, as Plaintiff's employment was conditioned on the successful background check. A reasonably diligent person would therefore have understood that Defendants had pulled a consumer report, starting the statute of limitations.

Plaintiff makes several arguments in response. First, Plaintiff contends that she "she did not discovery [sic] the violation when she signed the forms because since she was not mailed a copy of her report she had no reason to believe that Defendants had obtained one." (Plf.'s Opp'n at 4.) As an initial matter, Defendants do not argue that the violation occurred when Plaintiff signed the form; as the Ninth Circuit has explained, the violation occurred when Defendants

11

obtained the consumer report. *See Syed*, 853 F.3d at 506. Moreover, the fact that Plaintiff was not mailed a copy of her report is irrelevant; the mailing of the consumer report does not trigger the statute of limitations, and Plaintiff cites no authority that would suggest otherwise.

Second, Plaintiff contends that she did not know that a background check was performed. (Plf.'s Opp'n at 5.) Plaintiff fails to address the fact that she was given a job offer that was contingent on a satisfactory background check, and that she then started that job, facts that would lead a reasonable person to understand that a background check was performed by the time Plaintiff started her position. *See Ruiz*, 2018 WL 5099509, at *6 n.6; *Berrellez*, 2016 WL 5947221, at *6-7. Plaintiff does not explain why a reasonable person in those circumstances should not be deemed to have known that a background check had been performed. Instead, at the hearing, Plaintiff focused primarily on whether Plaintiff actually knew, rather than whether Plaintiff *should* have known. Plaintiff also pointed to no evidence suggesting she or a reasonable person would not understand from the documents, such as the job offer, that the start of her job was contingent on the successful background check.

Third, Plaintiff argues that even if she knew a background check was performed, she did not know at the time that the original disclosure was inadequate. (Plf.'s Opp'n at 5.) Even if Plaintiff was not aware that a violation had occurred, however, Plaintiff was aware of the *facts* that gave rise to her claim. She knew what forms she had agreed to, and therefore had the facts that would form the basis of any alleged violation of the federal and state disclosure acts. *See Mack v. Equable Ascent Fin., L.L.C.*, 748 F.3d 663, 665-66 (5th Cir. 2014) ("the general approach under the discovery rule [is] that a limitations period begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation"); *Ruiz*, 2018 WL 5099509, at *6 n.6 (same); *see also Wakefield v. Wells Fargo & Co.*, Case No. 13-cv-5053-LB, 2014 WL 5077134, at *12 (N.D. Cal. Oct. 9, 2014) ("If a plaintiff knows all facts underlying his breach of contract claim but does not know that those facts establish a legal violation, then it is not appropriate to apply equitable tolling. To hold otherwise renders a statute of limitations irrelevant any time a plaintiff knows the facts but does not know that the conduct is illegal.").

Plaintiff's citations are distinguishable. In *Broberg v. Guardian Life Insurance Co.*, the California Court of Appeal reversed the trial court's finding that the plaintiff's fraud claim was time-barred. 171 Cal. App. 4th 912, 921 (2009). The plaintiff had bought an insurance policy based on a three-page marketing material, where the first page had an illustration showing the elimination of out-of-pocket premiums after eleven years. *Id.* at 916. The third page, however, had a disclaimer stating that whether premiums were required depended on the company's dividend scale. *Id.* at 917. The Court of Appeal found that whether the disclaimer was sufficiently clear and obvious to trigger notice was a question of fact because "[t]he adequacy of a disclaimer in the context of an action for fraud is judged by reference to the plaintiff's knowledge and experience." *Id.* at 921. Likewise, in *Castillo v. Bank of America, N.A.*, the plaintiff's claims were based on loan documents that he had executed outside the statute of limitations. Case No. 14-2957-JSW, 2014 WL 4290703, at *2 (N.D. Cal. Aug. 29, 2014). The district court found there were sufficient facts for tolling because the plaintiff alleged he had been rushed to sign the documents in his non-native language, and that he was not able to procure the loan documents despite multiple requests for them. *Id.* The instant case, however, is not dependent on the plaintiff's knowledge, experience, or the circumstances of her filling out the job application. Rather, the alleged violations of the statutes at issue exist based on whether the disclosures and authorizations contain the required information; the plaintiff's state of mind is irrelevant to creating the cause of action. Likewise, Plaintiff points to no facts from when she signed and reviewed the job application which would have prevented her from discovering the facts of this case.

Fourth, Plaintiff contends that the doctrine of constructive notice should not apply to the ICRAA claim because it expressly incorporates a discovery based accrual rule, citing to *FDIC v. Dintino*, 167 Cal. App. 4th 333, 349-50 (2008). *FDIC* does not stand for this proposition. There, the bank accidentally reconveyed property to the borrower, which was recorded with the county recorder. *Id.* at 347. The borrower argued that because the mistakenly-recorded reconveyance was in the public record, the statute of limitations began to run from the date of recording, relying on *Shively v. Bozanich*, 31 Cal. 4th 1230 (2003). *Id.* at 348. The California Court of Appeal

13

disagreed, explaining that even if *Shively* stood for the proposition that "the discovery rule does not apply when the basis for a cause of action is contained in information accessible to the general public . . . we nevertheless conclude that holding does *not* apply to a cause of action subject to a limitations period under section 338, subdivision (d)." *Id.* at 349. This was because "[a]n exception to the general rule for defining the accrual of a cause of action is *the discovery rule*. It *may be expressed by the legislature or implied by the courts*. It postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 349-50 (internal quotation and modifications omitted). Thus, because section 338(d) expressly provided for the application of the discovery rule, *Shively* did not apply. *Id.* at 350.

In short, *FDIC* did not state that constructive notice does not apply to statutes that expressly incorporate the discovery rule; in fact, *FDIC* acknowledged that the discovery rule includes both actual and constructive notice, as it described the discovery rule as when a plaintiff "discovered, *or reasonably should have discovered*," the facts giving rise to its cause of action. 167 Cal. App. 4th at 348; *see also id.* at 349-50. This is consistent with Supreme Court precedent, which has explained that when legislators use the word "discovery" in a statute, "state and federal courts have typically interpreted the word to refer not only to actual discovery, but also to the *hypothetical discovery* of facts a reasonably diligent plaintiff would know." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 645 (2010) (emphasis added). Thus, courts have considered when a plaintiff *should* have known the facts that form the basis for her claim in ICRAA cases in determining when the statute of limitations starts to run. *See Berrellez*, 2016 WL 5947221, at *6-7 (dismissing ICRAA claims based on whether the plaintiff had constructive notice that BANA had procured a background check); *Alibris v. ADT LLC*, Case No. 9:14-cv-81616-Rosenberg, 2015 WL 5084231, at *7 (S.D. Fla. Aug. 28, 2015) (finding that the ICRAA "appl[ies] the 'discovery rule, pursuant to which a claim accrues when the litigant first knows or with due diligence should know facts that will form the basis for an action'").

Finally, Plaintiff argues that "[i]f Defendants' argument that receipt of an inadequate disclosure triggers the running of the statute of limitations was accepted, it would lead to absurd results." (Plf.'s Opp'n at 5.) Again, Plaintiff misapprehends Defendants' argument. Defendants

14

do not argue that the receipt of the inadequate disclosure triggered the statute of limitations, but that Plaintiff was put on notice that Defendant had requested the consumer report when she *started* her employment with Defendant. This is because Plaintiff's employment itself was contingent on the successful background check. Thus, the fact that Plaintiff was able to start working meant Plaintiff should have known a consumer report was procured because she would not have been able to start working otherwise. This limited situation would not render the five-year statute of limitations inapplicable in all cases, as Plaintiff suggests. (*Id.* at 6.) If an applicant who received inadequate disclosures from an employer was given a job offer that was not contingent on a successful background check, that applicant would have no reason to know that a consumer report was procured even when she started working. In that scenario, the plaintiff would have five years to bring a case from the time the consumer report was procured.

Because Plaintiff brought this case more than four years after she knew or should have known a consumer report was procured by Defendants, Plaintiff's claims are time-barred.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion to remand, and GRANTS Defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: May 17, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge